# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:15-CV-1981 |
| v. | ) | |
| | ) | Judge James B. Zagel |
| MACK TRUCKS, INC., and M&K | ) | |
| QUALITY TRUCK SALES OF SUMMIT, | ) | |
| LLC, d/b/a CHICAGO MACK, | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| Defendants. | ) | |

## DEFENDANT M&K QUALITY TRUCK SALES OF SUMMIT, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

NOW COMES the Defendant, M&K QUALITY TRUCK SALES OF SUMMIT, LLC (hereinafter referred to as "Chicago Mack," by and through its attorneys, HALL, PRANGLE & SCHOONVELD, LLC, and for its Motion for Judgment on the Pleadings, pursuant to Fed. R. Civ. P. 12(c), states as follows:

## I.     BACKGROUND

This lawsuit arises out of the sale of a Mack truck (hereinafter referred to as "the Truck") from Defendant Chicago Mack (Complaint, ¶4). Defendant Mack Trucks was the manufacturer of the Truck. (Complaint, ¶4). In Count III of Plaintiff's Complaint, Plaintiff asserted a cause of action against Defendant Chicago Mack for breach of implied warranty under the Illinois Commercial Code. In Count IV of Plaintiff's Complaint, Plaintiff asserts a cause of action against Defendant Chicago Mack for revocation of acceptance and cancellation of contract under Sections 5/2-608 and 5/2-711(1) of the Illinois Commercial Code. In Count V of Plaintiff's Complaint, Plaintiff asserts a cause of action against Defendant Chicago Mack to recover the price under Section 5/2-711(1) of the Illinois Commercial Code. On September 29, 2015, this

Court entered an Order dismissing Count III of Plaintiff's Complaint for breach of implied warranty with prejudice because Defendant Chicago Mack effectively disclaimed all implied warranties.

As raised in Defendant Chicago Mack's affirmative defenses 2 and 3, Plaintiff's revocation of acceptance, cancellation of contract and recovery of price claims are dependent on Plaintiff's implied warranty claim. Without this condition precedent claim of an implied warranty having been breached by Defendant Chicago Mack, Plaintiff cannot succeed on the derivative claims. As Plaintiff's implied warranty claim has been dismissed with prejudice, Defendant Chicago Mack respectfully requests that this Court enter judgment in its favor on Counts IV (revocation of acceptance and cancellation of contract) and V (recover the price) of the Complaint with prejudice.

## II.     ARGUMENT

### A.   Standard for Federal Rule of Civil Procedure 12(c) Motion on the Pleadings

Federal Rule of Civil Procedure 12(c) provides for judgment on the pleadings "after the pleadings are closed but within such time as not to delay the trial." "[T]he Court may properly dismiss a case before discovery – typically through a Rule 12(c) Motion for Judgment on the Pleadings – on the basis of an affirmative defense." *Brownmark Films, LLC. v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Defendant Chicago Mack moves for judgment on the pleadings on Plaintiff's revocation of acceptance, cancellation of contract and recovery of the price claims as they are not legally viable in the absence of a claim for breach of implied warranty.

**B. There Can Be No Claim For Revocation Of Acceptance, Cancellation Of Contract Or Recovery Of The Price Because There Is No Implied Warranty Claim**

Revocation of acceptance, cancellation of contract and recovery of the price are remedies for a breach of an implied warranty. In this case, it is undisputed that Defendant Chicago Mack made no warranties to Plaintiff. Accordingly, Plaintiff's remaining claims against Defendant Chicago Mack should be dismissed with prejudice.

In *Priebe v. Autobarn Ltd.*, 240 F.3d 584, 588 (7th Cir. 2001), the Seventh Circuit unequivocally stated that to be entitled to revoke acceptance under the Illinois Commercial Code, "[T]he plaintiff must prove that: (1) *there was a breach of an implied warranty of merchantability*; (2) the defect in the product substantially impaired the product's value to him; (3) the plaintiff reasonably thought the defect could be cured; and (4) it has not been cured.[1]" (emphasis added). The Seventh Circuit cited the First District Illinois Appellate Court decision *Collum v. Fred Tuch Buick*, 6 Ill.App.3d 317, 321, 285 N.E.2d 532, 535 (1st Dist. 1972) in support of this proposition. In *Collum*, the court stated that "The right to revoke acceptance of an automobile does not arise from every *breach of warranty*. . . To revoke acceptance the defect must substantially impair the value of the car to the plaintiff." *Collum*, 6 Ill.App.3d at 321, 285 N.E.2d at 535 (emphasis added).

Thus, according to the Seventh Circuit in *Priebe* and the Illinois Appellate Court in *Collum*, a breach of implied warranty is an essential element of a claim for revocation of acceptance and presupposes any such action and any substantial impairment analysis. This

---

[1] In affirming the district court's decision granting Defendant-dealer's Motion for Summary Judgment, the Court found that Plaintiff did not create a material issue of fact as to whether Defendant breached a warranty. The Court also addressed Plaintiff's argument claiming that a breach of warranty is not a necessary element of a revocation of acceptance claim and that only substantial impairment analysis is required. The Court noted that regardless of Plaintiff's argument on that issue, Plaintiff did not create a material issue of fact on that issue either. The Court's acknowledgment of Plaintiff's argument does not indicate any implied or express agreement with it.

reasoning has been adopted by other Illinois courts. *See also Soldinger v. Aston Martin*, 1998 WL 151817 *5 (N.D. Ill 1998) (Attached hereto as Exhibit A) (applying Illinois law and dismissing plaintiff's claim for revocation of acceptance in light of the fact that the implied warranty had been effectively disclaimed ).

This conclusion is supported by the Illinois Commercial Code. With respect to Plaintiff's revocation claim, under § 2-608 of the Illinois Commercial Code, "The buyer may revoke his acceptance of a lot or commercial unit whose *non-conformity* substantially impairs its value . . . ." 810 ILCS 5/2-608 (emphasis added). "Goods are . . . 'conforming' or conform to the contract when they are in accordance with the obligations of the contract." 810 ILCS 5/2-106(2). Furthermore, the Illinois Commercial Code permits the parties to agree that the buyer possess no warranty protection at all. 810 ILCS 5/2-316. The vehicle at issue was in conformance with the parties' agreement as Defendant Chicago Mack properly disclaimed all implied warranties. Accordingly, there could not be any nonconformance to trigger a revocation claim. *See also* 1 White & Summers, UNIFORM COMMERCIAL CODE § 8-4 (6th ed. 2015 Westlaw) (For revocation under 2-608 "there must be a 'nonconformity," i.e., a respect or respects in which the goods do not conform to the contract . . . But if the only relevant language in the agreement as to quality has been effectively disclaimed, no nonconformity in the goods sufficient for revocation can exist.'") Barkley Clark & Christopher Smith, The Law of Product Warranties §7.18[6] (2015) ("[R]evocation is a remedy for breach of warranty, and when the seller effectively disclaims warranty liability, there is no longer a right for which revocation can serve as a remedy.")[2]

---

[2] In Section 7.18, Professor Clark and Mr. Smith note the following:

  Some courts make the conceptual error of viewing revocation under § 2-608 as a matter totally
  separate from breach of warranty . . . The courts that reach . . . incorrect results are thrown off the

With respect to Plaintiff's cancellation of contract and recovery of the price claims, "'Cancellation' occurs when either party puts an end to the contract for breach by the other. . . ." 810 ILCS 5/2-106(4). Furthermore, Section 2-711(1) states that "[w]here the . . . buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if *the breach* goes to the whole contract . . . the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid." 810 ILCS 5/2-711(1) (emphasis added). Section 2-711, on which Plaintiff predicates his claims for cancellation and recovery of the price, requires not only a justifiable revocation of acceptance, *but also a breach* – both of which are absent here.

Courts from other jurisdictions have agreed with this position. *See Parsley v. Monaco Coach Corp.*, 327 F.Supp.2d 797, 803 (W.D. Mich. 2004) (The court found that where a seller disclaims all warranties, no revocation of acceptance claim can exist, noting that "if the only relevant language in the agreement as to quality has been effectively disclaimed, no nonconformity in the goods sufficient for revocation can exit.") (internal citations omitted); *McKissic v. Country Coach, Inc.*, 2009 WL 500502 at *7-*8 (M.D. Fla. 2009) (attached hereto as Exhibit B) (summary judgment granted to defendant on revocation claim because defendant had disclaimed all warranties*); Harden v. Ford Motor Company*, 408 F.Supp.2d 309, 312-14 (E.D. Mich. 2005)(court dismissed revocation claim when no implied warranty claim existed as defendant had disclaimed all warranties); and *Clark v. Ford Motor Co.*, 612 P.2d 316, 319

_____

track by the fact that § 2-714(2) provides a specific measure of damages for "breach of warranty" whereas § 2-608 does not mention "breach of warranty" but refers instead to "nonconformities." However, the only reason that § 2-608 speaks of "nonconformities" rather than "breach of warranty" is that the latter term is a subset of the former . . . [R]evocation is a remedy for breach of warranty, and when the seller effectively disclaims warranty liability, there is no longer a right for which revocation can serve as a remedy. Thus, a valid disclaimer under §2-316 . . . should preclude revocation. Fortunately, most courts recognize this truth. (Footnotes omitted).

(Or.App.1980) (where dealer disclaimed all warranties and buyer received vehicle bargained for there was no nonconformity to support revocation).

Plaintiff will likely rely on *Blankenship v. Northtown Ford, Inc.*, 95 Ill.App.3d 303, 420 N.E.2d 167 (4th Dist. 1981) in support of his position. In *Blankenship*, the Fourth District Illinois Appellate Court stated that revocation of acceptance "is appropriate even when the dealer has disclaimed all implied warranties." *Blankenship*, 95 Ill.App.3d at 306-7, 420 N.E.2d at 170-71. Despite this statement, the court found that defendant had not effectively disclaimed all implied warranties. *Blankenship*, 95 Ill.App.3d at 306-7, 420 N.E.2d at 170-71. As noted by the concurring opinion, the majority went too far in so holding because the implied warranties had not been effectively disclaimed. The concurring opinion noted that "had the disclaimer been properly effectuated, I would deem it to be a close question as to whether the disclaimer should be given the narrow application proposed by the majority." *Blankenship*, 95 Ill.App.3d at 308, 420 N.E.2d at 172.

In a situation where the Illinois Supreme Court has not spoken on the issue (as in this case), "[a]lthough persuasive . . . Illinois Appellate Court decisions do not bind" federal courts. *AAR Aircraft &Engine Group, Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001). This Court should apply Illinois law in the same way the Illinois Supreme Court would apply it. *Blankenship* does not accurately reflect how the Illinois Supreme Court would rule. This Court should follow the decision of the Seventh Circuit in *Priebe* and First District Illinois Appellate Court in *Collum* and find that Plaintiff's claims cannot survive in the absence of an implied warranty claim.

Defendant Chicago Mack is entitled to judgment on the pleadings on Plaintiff's revocation, cancellation of contract and recovery of the price claims because Plaintiff's claims

are dependent on an implied warranty claim – which has been dismissed with prejudice because all implied warranties were effectively disclaimed. Accordingly, Counts IV and V of the Complaint should be dismissed with prejudice.

### III. CONCLUSION

Wherefore, for the foregoing reasons, Defendant Chicago Mack respectfully requests that this Court grant its Motion for Judgment on the Pleadings and enter judgment in its favor on Counts IV and V of Plaintiff's Complaint.

Respectfully submitted,


/s/ Camille N. Khodadad
One of the Attorneys for Defendant
M&K QUALITY TRUCK SALES OF SUMMIT, LLC

L. Michael Tarpey (mtarpey@hpslaw.com)
Camille N. Khodadad (ckhodadad@hpslaw.com)
HALL PRANGLE & SCHOONVELD, LLC
200 South Wacker Drive, Suite 3300
Chicago, Illinois 60606
312-345-9600 | Phone
312-345-9608 | Fax

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that I served this **Motion for Judgment on the Pleadings** upon all attorneys of record as listed below via electronic filing through the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division before the hour of 5:00 p.m. on December 15, 2015.


/s/ Camille N. Khodadad
One of the Attorneys for Defendant
M&K QUALITY TRUCK SALES OF SUMMIT, LLC

*Attorney for Plaintiff*
Dmitry N. Feofanov
ChicagoLemonLaw.com, P.C.
404 Fourth Avenue West
Lyndon, Illinois 61261
Phone: 815-288-3217

4817-1171-5883, v. 1

Larry J. Soldinger Associates, Ltd. v. Aston Martin..., Not Reported in...

1998 WL 151817

1998 WL 151817
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.

LARRY J. SOLDINGER
ASSOCIATES, LTD., Plaintiff,
v.
ASTON MARTIN LAGONDA OF NORTH
AMERICA, INC., and LAKE FOREST
SPORTSCARS, LTD., Defendants.

No. 97 C 7792.  |  March 27, 1998.

## MEMORANDUM OPINION

KOCORAS, District J.

**\*1** This case comes before the court on the defendant's motion to dismiss Counts II through V of the complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, the court grants the defendant's motion.

## BACKGROUND

The following allegations, which we must assume to be true for purposes of this motion to dismiss, are taken primarily from the plaintiff's complaint. On April 8, 1997, plaintiff, Larry Soldinger Associates, Ltd. ("Soldinger"), purchased from defendant, Lake Forest Sportscars, Ltd. ("Lake Forest"), a 1997 Aston Martin DB7 Volante for $135,000, exclusive of taxes and fees. In connection with the purchase of the automobile, Lake Forest gave Soldinger a written warranty issued by defendant, Aston Martin Lagonda of North America, Inc. ("Aston Martin"). Aston Martin is the distributor of Aston Martin automobiles in the United States and an agent of the manufacturer, Aston Martin Lagonda Limited, a British company.

Lake Forest gave the plaintiff a bill of sale for the Volante, containing a section entitled "Warranties and/or Representations." In this section, the "New Vehicle Manufacturer Warranty" box was checked and the plaintiff was directed to the reverse side for further details as to the warranties given. On the reverse side, it states in bold, capital letters:

FACTORY WARRANTY: ANY WARRANTY ON ANY NEW OR USED VEHICLE STILL SUBJECT TO A MANUFACTURER'S WARRANTY IS THAT MADE BY THE MANUFACTURER ONLY. THE SELLER HEREBY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

Between April, 1997 and August, 1997, the Volante required service to correct problems with the electrical system, the driver's door and window, the passenger window, the speedometer, the seat belt casting, the wood console, and the radiator. On a number of occasions, plaintiff claims that the automobile stalled on the expressway. During the first five months of ownership, the car had been in the shop for repairs for five weeks. Despite attempts to repair the automobile, plaintiff claims that the defendants have been unable to cure the deficiencies. Plaintiff attempted to revoke acceptance of the automobile by letter on August 14, 1997. Defendants, however, refused to refund the purchase price of the car. Plaintiff then filed this suit.

Plaintiff filed suit against Lake Forest and Aston Martin for violations of the Magnuson–Moss Warranty Act, 29 U.S.C. § 2301, *et seq.* ("Magnuson–Moss"), and the Illinois Uniform Commercial Code, 810 ILCS 5/2–301, *et seq.* (the "UCC"). Count I of the complaint is brought against Aston Martin for breach of the written warranty issued to the plaintiff upon purchase of the automobile. Counts II through V are brought against both Lake Forest and Aston Martin and are the subject of Lake Forest's motion to dismiss. Counts II and IV allege that Lake Forest breached the implied warranty of merchantability under Magnuson–Moss and under the UCC, respectively. In Count III and Count V, plaintiff alleges claims for revocation of acceptance based on the defendants' breach of the implied warranty of merchantability under Magnuson–Moss and under the UCC, respectively. Lake Forest filed this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Before addressing the merits of Lake Forest's motion, we review the legal standard that guides our inquiry.



EXHIBIT

tabbies

A

Larry J. Soldinger Associates, Ltd. v. Aston Martin..., Not Reported in...

1998 WL 151817

## LEGAL STANDARD

**\*2** The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Defendants must meet a high standard to have a complaint dismissed because, in ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff. *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 733 (7th Cir.1986), *cert. denied,*482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). All well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Id.* Dismissal is improper "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Nonetheless, to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Gray v. County of Dane,* 854 F.2d 179, 182 (7th Cir.1988). With these principles in mind, we review the motion before us.

## DISCUSSION

Counts II and III of the complaint allege claims under the Magnuson–Moss Warranty Act. Magnuson–Moss prohibits a supplier, such as Lake Forest, from disclaiming any implied warranty if the supplier has made a written warranty to the consumer. 15 U.S.C. § 2308(a). Further, if the supplier adopted a written warranty issued by another, such as a manufacturer, then the supplier is liable under Magnuson–Moss and cannot disclaim the implied warranty of merchantability. *Lytle v. Roto Lincoln Mercury & Subaru. Inc.,* 167 Ill.App.3d 508, 118 Ill.Dec. 133, 521 N.E.2d 201, 204 (Ill.App.Ct.1988) (citing 16 C.F.R. § 700.4 (1987)). In this case, plaintiff does not allege that Lake Forest made a written warranty. Rather, plaintiff claims that Lake Forest adopted a written warranty issued by Aston Martin. If Lake Forest adopted Aston Martin's written warranty, then under Magnuson–Moss, Lake Forest cannot disclaim any implied warranties, including the implied warranty of merchantabilitiy. Because the facts alleged by the plaintiff cannot support his claim that Lake Forest adopted Aston Martin's written warranty, the court must dismiss Counts II and III of the complaint to the extent they state claims against Lake Forest.

In Count II of the complaint, plaintiff simply states that "defendants, having made a written warranty, may not disclaim or modify any implied warranty to the consumer." Plaintiff does not allege any facts to establish that Lake Forest issued a written warranty or that Lake Forest adopted Aston Martin's written warranty. Instead, plaintiff claims in response to Lake Forest's motion that Lake Forest expressly adopted Aston Martin's written warranty when it checked the "New Vehicle Manufacturer Warranty" box under the heading "Warranties and/or Representations" in the bill of sale. This alone is insufficient to support an inference that Lake Forest adopted Aston Martin's written warranty.

**\*3** "[T]he mere delivery, presentation or explanation of a manufacturer's warranty, without more, does not render a dealer a cowarrantor by adoption." *Lytle,* 118 Ill.Dec. 133, 521 N.E.2d at 204. In *Lytle,* the Illinois Appellate Court rejected the plaintiff's argument that the dealer had adopted the written warranties made by the manufacturer by issuing the warranty booklet and signing the inside cover. The court explained that the fact that the dealer signed the warranty booklet merely showed that the dealer had presented the manufacturer's warranty to the purchaser. The court stated that the dealer "is certainly authorized, if not obligated, to issue such a booklet with each new Subaru that it sells" and found, as a matter of law, that the dealer did not adopt the manufacturer's warranty based on those facts alone.

Plaintiff argues that *Felde v. Chrysler Credit Corp.,* 219 Ill.App.3d 530, 162 Ill.Dec. 565, 580 N.E.2d 191 (Ill.App.Ct.1991), supports its claim that Lake Forest adopted Aston Martin's written warranty. However, *Felde* is distinguishable from this case. In *Felde,* the court found that the dealer, Shaumburg Dodge, had adopted the written warranty issued by the manufacturer, Chrysler. The dealer invoice given to the plaintiffs stated that no warranties had been made by the dealer or manufacturer "excepting only Chrysler Corporation's current printed warranty applicable to such vehicle or vehicle chassis which warranty is incorporated herein and made a part hereof ...." "[S]ince it was explicitly incorporated into the dealer invoice which set forth the conditions of sale," the court found that the Shaumburg Dodge had adopted Chrysler's written warranty. In turn, the dealer's disclaimer of the implied warranty of merchantability was invalid under the Magnuson–Moss Warranty Act.

In this case, there is no incorporation language in the bill of sale issued by Lake Forest. Instead, the bill of sale provides that the only warranty issued to the purchaser is the "New

Larry J. Soldinger Associates, Ltd. v. Aston Martin..., Not Reported in...

1998 WL 151817

Vehicle Manufacturer Warranty." The bill of sale also directs the purchaser to the reverse side for details. The reverse side makes clear that "any warranty on any new vehicle ... is that made by the manufacturer only." The court cannot infer from this language that Lake Forest adopted Aston Martin's written warranty. The only inference supported by the bill of sale is that Lake Forest merely "delivered" and "presented" Aston Martin's warranty. Because Lake Forest did not make any written warranties to the plaintiff, its claim in Count II of the complaint fails. Accordingly, we dismiss Count II of the complaint to the extent it applies to Lake Forest.

In Count III of the complaint, plaintiff invokes Section 2310(d)(1) of the Magnuson–Moss Warranty Act and seeks revocation of acceptance of the automobile and a refund of the purchase price. Section 2310(d)(1) provides that "a consumer who is damaged by the failure of a supplier ... to comply with any obligation ... under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." Plaintiff's claim for revocation of acceptance depends upon whether Lake Forest failed to comply with a written warranty or an implied warranty. We have found that Lake Forest did not make a written warranty to the plaintiff and thus did not have any obligations under a written warranty. As such, Magnuson–Moss does not prevent Lake Forest from effectively disclaiming any implied warranties. As will be explained more thoroughly below, Lake Forest properly disclaimed the implied warranty of merchantability on the bill of sale it issued to the plaintiff. Lakefront, therefore, did not have any obligation to the plaintiff under an implied warranty. Accordingly, the court dismisses Count III of the complaint as applied to Lake Forest because plaintiff can prove no set of facts in support of its claim that Lake Forest violated the Magnuson–Moss Warranty Act.

*4 In Count IV of the complaint, plaintiff claims that the Volante was subject to an implied warranty of merchantability that was breached by Lake Forest. Lake Forest seeks dismissal of Count IV because it claims that it properly disclaimed all implied warranties, including the implied warranty of merchantability. We agree with Lake Forest. Under the Uniform Commercial Code, which Illinois has adopted, a seller may disclaim the implied warranty of merchantability provided that the language mentions "merchantability" and the writing is conspicuous. 810 ILCS 5/2–316. Whether a disclaimer is conspicuous is a question of law for the court. *Carpenter v. Mobile World, Inc.,* 194 Ill.App.3d 830, 141 Ill.Dec. 537, 551 N.E.2d 724, 728

(Ill.App.Ct.1990). Conspicuousness is defined by the UCC as a term or clause that is "so written that a reasonable person against whom it is to operate ought to have noticed it." (Ill.Rev.Stat., ch. 26, par. 1–201(10)).

In this case, Lake Forest's disclaimer contains language mentioning "merchantability" in writing that is conspicuous. The disclaimer states: "The seller hereby disclaims all warranties, either express or implied, including any implied warranty of merchantability ...." The writing is in bold-face type and the heading is in capital letters. Second, directly above the signature line, it states: "Purchaser agrees that this order of the text. The fact that disclaimer is on the back side of the bill of sale does not make it invalid. In two places on the front side of the bill of sale, the reader is directed to the back side for explanation of the warranties. First, under the heading "Warranties and/or Representations", it states: "See reverse side for details." This language is in bold print and the heading is in capital letters. Second, directly above the signature line, it states: "Purchaser agrees that this order includes all of the terms and conditions on both the face and reverse side ...." Given these directions, a reasonable person would have read the back side of the bill of sale and noticed the disclaimer. Lake Forest's disclaimer of the implied warranty of merchantability is valid and effective. Accordingly, we dismiss Count IV of the complaint.

Plaintiff contends that Lake Forest's disclaimer is invalid because the same disclaimer was held invalid by the court in *Blakenship v. Northtown Ford, Inc.,* 95 Ill.App.3d 303, 50 Ill.Dec. 850, 420 N.E.2d 167 (Ill App.Ct.1981). *Blakenship* is distinguishable. In *Blakenship,* the court found that the dealer's disclaimer of all warranties was misleading in a consumer transaction. The court stated that "[e]ven if these disclaimers were in technical compliance with section 2–316 ... the surrounding circumstances of this transaction would prohibit the dealer from being allowed to avoid rescission based upon their technical compliance with section 2–316." In this case, the disclaimers comply with section 2–316 and the plaintiff has not alleged any special, surrounding circumstances that would make the disclaimers ineffective. Accordingly, we dismiss Count IV of the complaint.

*5 The court is left with the plaintiff's claim of revocation of acceptance in Count V of the complaint. Although unclear, it appears that Count V is based upon Lake Forest's alleged breach of the implied warranty of merchantability. Because we have found that Lake Forest's disclaimer was effective and valid, we must dismiss Count V of the complaint against Lake Forest.

## CONCLUSION

For the reasons set forth above, the court grants Lake Forest's motion to dismiss.

**All Citations**

Not Reported in F.Supp., 1998 WL 151817

---

End of Document        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 500502
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Tampa Division.

Allen and Evelyn McKISSIC, Plaintiffs,

v.

COUNTRY COACH, INC. and Lazy
Days RV Center, Inc., Defendants.

No. 8:07-cv-1488-T-17EAJ.  |  Feb. 27, 2009.

West KeySummary

**1**      **Limitation of Actions**

⚖ Contracts;  Warranties

A purchasers' claim of breach of express warranty against a manufacturer began to run when the warranty at issue expired because the warranty expired before the breach giving rise to the cause of action was discovered or should have been discovered by the purchasers and the manufacturer did not expressly agree to provide warranty coverage beyond the warranty's expiration date. West's F.S.A. § 95.11(2)(b).

Cases that cite this headnote

**Attorneys and Law Firms**

Kenneth W. Lockwood, Consumer Legal Services, PC, Tampa, FL, for Plaintiffs.

Brian DeWitt Shank, Richard Alan Solomon, W. Scott Powell, Powell & Pearson, LLP, Winter Park, FL, for Defendants.

*ORDER ON DEFENDANTS' PENDING MOTIONS*

ELIZABETH A. KOVACHEVICH, District Judge.

**\*1** This cause comes before the Court on two motions for summary judgment: Defendant, Lazy Days R.V. Center, Inc.'s, Motion for Summary Judgment filed July 15, 2008 (Dkt.84); Defendant, Country Coach, Inc.'s, Motion for

Summary Judgment filed July 31, 2008 (Dkt.93); [1] and Plaintiffs' Response and Authority in Opposition thereto (Dkt.103). Also before the Court are Defendants' Objection to Plaintiff's Unathenticated/Hearsay Exhibits filed October 7, 2008 (Dkt.105), Defendants' Motion to Strike Plaintiff's Belated Unauthenticated "Draft" Report from Non-disclosed Expert filed October 9, 2008 (Dkt.108), Defendants' Motion to Strike Plaintiff's Belated and Improper "Notice of Filing" on 8/9/08 filed October 9, 2008 (Dkt.110), and Defendants' Motion to Strike Plaintiff's Belated and Improper "Notice of Filing" on 10/10/08 2008 (Dkt.112). No responses were filed as to these motions.

For reasons set forth below, the Defendants' motion for summary judgment should be GRANTED in favor of Lazy Days R.V. Center, Inc. and GRANTED in favor of Country Coach, Inc., Defendants' Objections are SUSTAINED and Defendants' Motions to Strike are GRANTED.

**BACKGROUND**

On or about March 17, 2002, Plaintiffs contracted to purchase a used 2002 Country Coach, Inc. (hereafter "Manufacturer") recreational vehicle (hereafter "RV") from Lazy Days, Inc. ("Lazy Days") for approximately $311,900.00. Lazy Days is authorized by Country Coach to sell Country Coach RVs. Plaintiffs' purchase of the vehicle from Lazy Days was memorialized in a written Buyer's Order. In paragraph nine on the back of the Buyer's Order, Lazy Days excludes all warranties:

*EXCLUSION OF WARRANTIES. I UNDERSTAND THAT THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, ARE EXCLUDED BY YOU FROM THIS TRANSACTION AND SHALL NOT APPLY TO THE GOODS SOLD. I UNDERSTAND THAT THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF REGARDING THE UNIT OR ANY APPLIANCE OR COMPONENT WHICH IS A PART OF THE UNIT OR THIS SALE.*

Further, paragraph eleven states:

*MANUFACTURERS WARRANTIES. MECHANICAL PROBLEMS MAY ARISE WITH ANY VEHICLE. I UNDERSTAND THAT THERE MAY BE WRITTEN*

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.



EXHIBIT
B

*WARRANTIES COVERING THE UNIT PURCHASE, OR ANY APPLIANCE(S) OR THE COMPONENT(S), SUCH AS THOSE WHICH HAVE BEEN PROVIDED BY THE MANUFACTURERS OF THE UNIT, THE APPLIANCE(S) OR THE COMPONENT(S). I UNDERSTAND THAT THE WARRANTY OR WARRANTIES I RECEIVED AT THE TIME OF SALE ARE MY EXCLUSIVE AND SOLE REMEDY FOR ANY PROBLEMS THAT I MIGHT HAVE WITH THE UNIT OR ANY APPLIANCE(S) OR COMPONENT(S). I AGREE THAT NO OTHER REMEDIES ARE AVAILABLE TO ME, INCLUDING BUT NOT LIMITED TO, REVOCATION OF ACCEPTANCE AND RESCISSION.*

Defendant Manufacturer, Country Coach, disclaims responsibility for consequential and incidental damages on the back side of warranty document separate from the Buyer's orders. This COUNTRY COACH HOUSE/COACH LIMITED WARRANTY states on the back:

## CONSEQUENTIAL DAMAGES

**\*2** Without regard to the alleged defect, Country Coach does not assume under any circumstances any responsibility for any consequential or incidental damages resulting from a defect in the motorhome, including without limitation, loss of time, loss of revenue, inconvenience expense for fuel, telephone or other communication charges, towing or service calls, rental vehicles, travel, meals, lodging, loss or damage to personal property, personal injury or emotional distress. Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation may not apply to you.

The date of the first retail purchase of the RV, by a previous owner, occurred on April 25, 2001. (A. McKissic depo. P.75, L. 25, P. 76, L. 1-5; Exhibit 3; Affidavit of W. Williams). Upon purchasing the vehicle used on March 17, 2002, Plaintiffs received the COUNTRY COACH HOUSE/ COACH LIMITED WARRANTY with their purchase of this used RV. (A. McKissic depo., P. 75, L. 9-15). Such Manufacturer's warranty states on its face:

## WARRANTY PERIOD

Except as provided under the Structural Warranty described immediately below, the term of this limited warranty is 12 months from the date the motorhome is delivered to the first retail purchaser. Warranty repairs do not extend the warranty term for the house/coach portion of the motorhome or for any specific part, component or system.

(Dkt.86, Ex. 8). Further, the backside of the Manufacuter's warranty states:

## COUNTRY COACH RESPONSIBILITY

Upon notice of the defect, any part of the motorhome subject to this limited warranty which is found to be defective in material or workmanship will be repaired or replaced, at Country Coach's option, without charge to the owner for parts or labor. For the purpose of this limited warranty, a part is not defective in material or workmanship if it performs substantially within the design specifications for the part.

(Dkt.86, Ex. 8). Thus, by its express terms, the twelve month COUNTRY COACH HOUSE/COACH LIMITED WARRANTY coverage began on April 25, 2001, and expired on April 24, 2002. (Dkt. 95, Affidavit of W. Williams, paragraph 4). This left the Plaintiffs with thirty-nine days of such warranty coverage. (Dkt. 86, A. McKissic depo., P. 76, L. 6-9; Affidavit of W. Williams, paragraph 5). The two defect concerns (slide room leaks and water leakage/mold) alleged by Plaintiffs' complaint, were not reported by Plaintiffs until after the April 24, 2002, expiration of the "COUNTRY COACH HOUSE/ COACH LIMITED WARRANTY."(Dkt. 95, Affidavit of W. Williams, paragraph 6).

On August 21, 2007, Plaintiffs filed a complaint (Dkt.2) containing the following claims against Lazy Days: Breach of Implied Warranties by Dealer under the UCC (Count I); Breach of Express Warranties by Dealer under the UCC (Count II); Breach of Express Warranties by Dealer under Magnuson-Moss (Count III); Breach of Implied Warranties by Dealer under Magnuson-Moss (Count IV); Revocation of Acceptance against Dealer (Count V); and Deceptive and Unfair Trade Practices by Dealer (Count VI). Judgment was granted on Counts I-IV and VI in favor of the Lazy Days on July 16, 2008, in this Court's Order on Defendant's Motion for Reconsideration (Dkt.88). Revocation of Acceptance against Dealer (Count V) is the only remaining count at issue in Defendant, Lazy Days', Motion for Summary Judgment (Dkt.84).

**\*3** Plaintiffs' complaint further alleged claims against Manufacturer for: Breach of Express Warranties by

Manufacturer under the UCC (Count VII): Breach of Implied Warranties by Manufacturer under the UCC (Count VIII); Breach of Express Warranties by Manufacturer under Magnuson-Moss (Count IX); and Breach of Implied Warranties by Manufacturer under Magnuson-Moss (Count X). Judgment was granted on Counts VIII and X in favor of the Defendant Manufacturer on March 3, 2008, in this Court's Order on Motion to Dismiss, leaving only Breach of Express Warranties by Manufacturer under the UCC (Count VII) and Magnuson-Moss (Count IX) at issue for Defendant Manufacturer's Motion for Summary Judgment.

On July 15, 2008, Lazy Days filed a Motion for Summary Judgment (Dkt.84) with respect to the remaining count. Defendant Manufacturer also filed a Motion for Summary Judgment on July 31, 2008 (Dkt.93) with respect to the remaining two counts. Plaintiffs responded in opposition to both of Defendants' Motions for Summary Judgment on October 7, 2008 (Dkt.103, Dkt.104). Defendants objected (Dkt.105) to Plaintiffs' inclusion of alleged unauthenticated/ hearsay exhibits (Dkt.103-5) attached to Plaintiffs' response. Plaintiffs also filed an Inspection Report on October 8, 2008 (Dkt.107-2) and October 9, 2008 (Dkt.109-2). Defendants' filed a Motion to Strike this Inspection Report on October 9, 2008 (Dkt.108, Dkt.109). Defendants again filed a further Motion to Strike this Inspection report on October 10, 2008, in response to Plaintiffs' failed attempt at filing an amended Inspection report that included a signature where the previous Inspection reports had not been signed (Dkt.111-2).

## STANDARD OF REVIEW

Summary judgment is appropriate when the facts properly supported by the record and taken in the light most favorable to the non-moving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(c). The movant bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one that "might affect the outcome of the suit under the governing law."*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The evidence presented must be construed in favor of the non-moving party, and that party must receive the benefit of all favorable inferences that can be drawn from that party's evidence. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)."The opposing party must counter the moving party's affidavits with opposing affidavits or other competent evidence setting forth specific facts to show that there is a genuine issue of material fact for trial."*United States v. An Article of Drug,* 725 F.2d 976, 984-985 (5th Cir.1984). The opposing evidence must be based on admissible evidence of facts and may not be based upon conclusory allegations.*Bloodsworth v. Smith & Nephew, Inc.,* 476 F.Supp.2d 1348, 1350 (M.D.Ala.2006) (quoting *Chaney v. United Serv. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996)). Once the movant meets the initial burden of demonstrating the absence of a genuine issue of material fact, summary judgment is appropriate if the non-movant fails to make a showing to establish the existence of an element essential to its case, which it has the burden of proof at trial. *Celotex,* 477 U.S. at 322. The Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."*Liberty Lobby,* 477 U.S. at 249.

## DISCUSSION

*4 Although Plaintiff Evelyn McKissic died on September 19, 2007 [A. McKissic depo. P. 20, L. 8-13], Plaintiffs have not filed any motion for substitution pursuant to Federal Rule of Civil Procedure 25(a). However, in recognition of the possibility of substitution under this rule, this Court will continue to acknowledge two Plaintiffs within this case and accordingly refer to Plaintiffs in the plural.

## I. Defendants' Objection to Unauthenticated/Hearsay Exhibits

In support of Plaintiffs' Response and Incorporated Authority in Opposition to Lazy Days' Motion for Summary Judgment (Dkt.104), on October 7, 2008, Plaintiffs submitted an attached letter and report (mold documentation) from McGregor Pearce, MPH, an Environmental Health Consultant (Dkt 103-5), dated June 21, 2006. Defendants object to this mold documentation on the grounds that the such documents are unauthenticated hearsay. This Court recognizes that for a document "to be considered for or against summary judgment, [it] must be authenticated, either by an affidavit that meets the requirements of Rule 56(e), Federal Rules of Civil Procedure, or in accord with

the Federal Rules of Evidence."*XPEDX v. Wells,* 2007 U.S. Dist. LEXIS 67000, *5 (M.D.Fla. Sept. 11, 2007) (citing *Williams v. Eckerd Family Youth Alternative,* 908 F.Supp. 908, 911 (M.D.Fla.1995)). The Plaintiffs' mold documentation (Dkt.103-5) is neither sworn nor certified, and, therefore, lacks any authenticating affidavit attachment. Thus, Plaintiffs' mold documentation (Dkt.103-5) fails to meet the requirements of Civ. P. 56(e).

Further, Federal Rules of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."Fed.R.Evid. 901(a). Plaintiffs have offered no foundation or further evidence to support that the disputed mold documentation is what the Plaintiffs claim it to be. While the document's author is identified as individual by the name of Mac Pearce, there is no evidence of his signature on the face of the document.

The Court also fails to accept the mold documentation under one of the Hearsay Exceptions to the Federal Rules of Evidence. Specifically, although the mold documentation potentially qualifies under Fed.R.Evid. 803(6) (the Business records exception), this rule requires that the mold documentation be "shown by custodian or other qualified witness, or certification that complies with Rules 902(11) or 902(12), or statute."To be admissible, Fed.R.Evid. 902(11) requires the Mold documentation at issue to be:

[A]ccompanied by written declaration or qualified person certifying the record in manner stated in a manner complying with Any act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record:

(A) was made at or near the time of the occurrence of the matters set forth by, or from information by, a person with knowledge of those matters;

*5 (B) was kept in the course of regularly conducted activity; and

(C) was made by the regularly conducted activity as a regular practice

A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

Because the mold documentation lacks a signature and proper certification as set forth in Fed.R.Evid. 902(11), the Court will not consider the mold documentation in reviewing the Defendants' Motion for Summary Judgment. [2]

Defendants also argue that the mold documentation filed by the Plaintiffs as "expert" evidence, is barred by Fed.R.Civ.P. 37(c) for failure to conform with the parties' Case Management Report service under Fed.R.Civ.P. 26(a)(2) expert disclosure report. In light of the Court's above analysis and finding that Plaintiffs' mold documentation will not be considered for Defendants' motions for summary judgment, such issues will not be addressed.

Defendants' objection to unauthenticated/hearsay exhibits is SUSTAINED.

## II. Defendants' Motion to Strike

In support of Plaintiffs' Response and Incorporated Authority in Opposition to Defendants' Motions for Summary Judgment (Plaintiff's Response), Plaintiffs have submitted a October 8, 2008 "Draft" Inspection Report (Inspection Report) (Dkt.107-2, 109-2). Defendants have filed a motion to strike this Inspection Report on the grounds that such report does not meet the admissibility criteria of Fed.R.Civ.P. 56(e) or the Federal Rules of Evidence.

The Court notes that although Defendants have filed the motion to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, "Rule 12(f) only applies to matters within the pleadings ."*Jordan v. Cobb County, Georgia,* 227 F.Supp.2d 1322, 1346 (N.D.Ga.2001). Thus, this Court will consider Defendants' arguments as objections to the materials attached to Plaintiffs' Response. *See Sklar v. Clough,* No. 1:06-CV-0627-JOF, 2007 WL 2049698, at *1 (N.D.Ga. July 6, 2007); *XPEDX,* 2007 U.S. Dist. LEXIS 67000, at *4.

While the Court recognizes that it "should give credence to evidence favoring the non-movant as well as uncontradicted and unimpeached evidence from disinterested witnesses that supports the moving party,"*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000), "inadmissible hearsay cannot be considered on a motion for summary judgment."*Macuba v. Deboer,* 193 F.3d 1316, 1322 (11th Cir.1999). The Plaintiff's Inspection Report contains no attached affidavit verifying its

authenticity, states "DRAFT REPORT ONLY" on its face, and contains no author's signature. Although the Inspection Report does identify W. Jay Zembower CMAT/CTT as the author, this document suffers from insufficient evidence to authenticate this author. For these reasons, the Inspection Report fails to meet the Requirements of Fed.R.Civ.P. 56(e).

**\*6** In considering whether the Inspection report survives admissibility under the Federal Rules of Evidence, the Court finds that it does not. Under the analysis of evidence admissibility set forth above for the Business records exception and Fed.R.Evid. 902(11), the Court finds that because the Inspection Report is unsigned and lacks accompaniment by "written declaration or qualified person certifying the record ..." this evidence is inadmissible. For these reasons, the Court will not consider the Inspection Report in reviewing the Defendants' motion for summary judgment.

Similar to Defendants' argument to exclude the mold documentation for reasons of Plaintiffs' failure to conform with the parties' Case Management Report, Defendants also argue that Fed.R.Civ.P. 37(c) (1) precludes admission of Plaintiffs' Inspection Report. However, due to the Court's above analysis and finding that the Inspection Report will not be considered for Defendants' motion for summary judgment, such issues will not be addressed.

Defendants' objections to the Inspection report are SUSTAINED. Accordingly, Defendants' Motions to Strike Plaintiffs' Unauthenticated "Draft" report are GRANTED.

### III. Lazy Days' (Dealer) Motion for Summary Judgment

#### Count I

Lazy Days' Motion for Reconsideration was granted on July 16, 2008 (Dkt.88) for Count I of Plaintiffs' complaint, Breach of Implied Warranties under the UCC, for Plaintiffs' failure to state a cause of action upon which relief may be granted.

#### Count II

Lazy Days' Motion for Reconsideration was granted on July 16, 2008 (Dkt.88) for Count II of Plaintiffs' complaint, Breach of Express Warranties by Dealer under the UCC, for Plaintiffs' failure to state a cause of action upon which relief may be granted.

#### Count III

Lazy Days' Motion for Reconsideration was granted on July 16, 2008 (Dkt.88) for Count III of Plaintiffs' complaint, Breach of Express Warranties by Dealer under Magnuson-Moss, for Plaintiffs' failure to state a cause of action upon which relief can be granted.

#### Count IV

Lazy Days' Motion for Reconsideration was granted on July 16, 2008 (Dkt.88) for Count IV of Plaintiffs' complaint, Breach of Implied Warranties by Dealer under Magnuson-Moss, for Plaintiffs' failure to state a cause of action upon which relief can be granted.

#### Count V

Plaintiffs assert a claim for revocation of acceptance against Lazy Days. However, Plaintiffs' opposition to the Lazy Days' Motion for Summary Judgment does not address Count V, Revocation of Acceptance against Dealer. Instead, Plaintiffs' opposition only includes arguments for counts that have been previously granted in favor of Lazy Days in a prior Order. However, in the context of an unopposed motion for summary judgment, "[a] district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the motion on the merits." *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir.2008).

**\*7** Under Florida law, *Florida Statute § 672.608* provides the following provisions regarding revocation of acceptance:

(1) The buyer may revoke her or his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to her or him if she or he has accepted it:

(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured: or

(b) Without discovery of such nonconformity if her or his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regards to the goods involved as if she or he had rejected them.

However, a seller is allowed to disclaim or contractually limit a buyer or potential buyer's right to revoke acceptance. *Fla. UCC § 672.719(a).* In moving for summary judgment on Count V, Lazy Days argues that under paragraph eleven of Buyer's Orders, Plaintiff surrendered the right to revoke acceptance. Paragraph eleven states:

*MANUFACTURERS WARRANTIES. MECHANICAL PROBLEMS MAY ARISE WITH ANY VEHICLE. I UNDERSTAND THAT THERE MAY BE WRITTEN WARRANTIES COVERING THE UNIT PURCHASE, OR ANY APPLIANCE(S) OR THE COMPONENT(S), SUCH AS THOSE WHICH HAVE BEEN PROVIDED BY THE MANUFACTURERS OF THE UNIT, THE APPLIANCE(S) OR THE COMPONENT(S). I UNDERSTAND THAT THE WARRANTY OR WARRANTIES I RECEIVED AT THE TIME OF SALE ARE MY EXCLUSIVE AND SOLE REMEDY FOR ANY PROBLEMS THAT I MIGHT HAVE WITH THE UNIT OR ANY APPLIANCE(S) OR COMPONENT(S). I AGREE THAT NO OTHER REMEDIES ARE AVAILABLE TO ME, INCLUDING BUT NOT LIMITED TO, REVOCATION OF ACCEPTANCE AND RESCISSION.*

This Court held in a previous Order (Dkt.88) that because the exclusion of the revocation of acceptance within paragraph eleven is found under the title "Manufacturers Warranties" of the Buyer's Orders, that the revocation of acceptance only refers to Defendant, Manufacturer, and not Lazy Days, the Dealer. Accordingly, this Court found that Lazy Days "did not properly modify or exclude revocation of acceptance so that Count V survives as an available remedy to Plaintiffs, so long as they can establish that their revocation meets the terms set forth in § 672.608."Dkt. 88, *McKissic v. Country Coach, Inc.,* 2008 U.S. Dist. LEXIS 104147, at *20 (M.D.Fla. July 16, 2008).

Lazy Days further argues that because it disclaimed all warranties in paragraph nine of the Buyer's Order, that Plaintiffs have no basis to make a revocation of acceptance claim. "Revocation of acceptance is not available as a remedy for buyers where a vehicle dealer effectively disclaims all warranties on the goods."*Ames v. Winnebago Indus., Inc.,* 2005 WL 2614614, at *4-5 (M.D.Fla. Oct.14, 2005)."Revocation of acceptance is not available ... where a

seller disclaims all warranties."*Drew v. Boaters Landing Inc. of Ft. Myers,* 2007 U.S. Dist. LEXIS 67676, at *7 (M.D.Fla. Sept. 13, 2007).*See e.g. Frank Griffin Volkswagen v. Smith,* 610 So.2d 597, 599 (Fla. 1st DCA 1992). This Court held in a previous Order that Lazy Days' "disclaimers are conspicuous" and that "Lazy Days has demonstrated that it has disclaimed all warranties, express and implied."Dkt. 88, *McKissic,* 2008 U.S. Dist. LEXIS 104147, at *11. Specifically, this Court dismissed Counts I-IV of the Plaintiff's complaint alleging breach of express and implied warranties by Defendant Dealer under Magnuson-Moss and the UCC (Dkt.88).

**\*8** In further supporting this argument, Lazy Days relies on *Chmura v. Monaco Coach Corporation* to highlight this district's interpretation of the identical paragraph nine and paragraph eleven provisions as are present in the instant case's Buyer's Order. Case No. 8:04-cv-2054-T-24MAP, 2006 U.S. Dist. LEXIS 11217, at *9 (M.D.Fla. Mar. 20, 2006); 2006 WL 709325, at *2-4. In reviewing Lazy Days' disclaiming language within paragraph nine and eleven, the *Chmura* court reasoned:

> Since Lazy Days has shown that the disclaimers are conspicuous, Lazy Days has shown that it has disclaimed all warranties, express and implied. As such, Lazy Days has shown that there is no basis for Plaintiff to revoke his acceptance, because Plaintiff has not shown a breach of a contractual obligation by Lazy Days (since there were no warranties given by Lazy Days that Lazy Days could have breached).2006 U.S. Dist. LEXIS 11217, at *10-11.

Similarly, in the instant case Plaintiffs executed Lazy Days' Buyer's Order to purchase the subject RV. With the language of paragraph nine previously determined by this Court to conspicuously disclaim any Lazy Days express or implied warranties, Lazy Days cannot breach a contractual obligation that does not exist. Consequently, there cannot be any breach by Lazy Days that could trigger Plaintiffs' ability to revoke acceptance.

Lazy Days further argues that Count V is time-barred and also asserts that Count V is legally deficient due to Plaintiffs' lack of expert witness and admissible proof of cognizable damages. However, due to the Court's above analysis, such issues will not be addressed. This Court is persuaded that

Lazy Days has demonstrated that Count V, Revocation of Acceptance by Dealer, is not available to Plaintiffs in this case. Accordingly, Lazy Days' Motion for Summary Judgment is granted as to Count V for failure to state a cause of action against Lazy Days as a matter of law.

### Count VI

In the Court's Order on Motion to Dismiss (Dkt.47), the Court agreed with Lazy Days that Count VI, Deceptive and Unfair Trade Practices by Dealer, should be granted in favor of Lazy Days because such action is time-barred by the applicable statute of limitations. However, the Court's Order on Defendants Motion to Dismiss incorrectly stated Count VI as denied when it should have been granted. Accordingly, Dealer's Motion for Reconsideration was granted on July 16, 2008 (Dkt.88) for Count VI of Plaintiffs' complaint, Deceptive and Unfair Trade Practices by Dealer. The Court granted judgment on Count VI in favor of Lazy Days to amend the scrivener's error that occurred in the Court's previous Order on Motion to Dismiss on March 3, 2008 (Dkt.47).

### IV. Defendant Manufacturer's Motion for Summary Judgment

### Count VII

There was a scrivener's error in the Court's Order on Motion to Dismiss on March 3, 2008 (Dkt.47) when the Court granted in part and denied in part Defendants' Motion to Dismiss. Due to this scrivener's error, Defendant Manufacturer's Motion to Dismiss Plaintiffs' claims for Breach of Express Warranty by Manufacturer under the UCC, Count VII, was incorrectly stated as GRANTED while in fact Count VII was DENIED in the Court's Order (Dkt.47). Accordingly, dismissal of Count VII should have been denied contrary to the language of the Order. Thus, Defendant, Manufacturer's, Motion to Dismiss Plaintiffs' claims for Breach of Express Warranty by Manufacturer under the UCC, Count VII, is DENIED nunc pro tunc to the date of the order.

**\*9** Plaintiffs allege that Country Coach breached an express warranty that the motor home purchased by the Plaintiffs was fit for the ordinary purposes of safe, reliable, and attractive transportation; was of good, sound, and merchantable quality; free from defective parts and workmanship; engineered and designed as to function without unreasonable maintenance and repairs; that in the event that the RV was not free from such defects, Country Coach would repair and replace such

defects without costs to the Plaintiffs; and that any defects would be cured within a reasonable time. The Plaintiffs further allege that Country Coach breached said warranty since the Plaintiffs have had repeated problems with water leaks and mold. The Plaintiffs claim that Country Coach has been given a reasonable opportunity to cure these defects, but Country Coach has been unable and/or refused to do so within a reasonable time and without costs to Plaintiff.

### A. Timeliness

"Claims must be filed before the running of the statutes of limitation or the claims are barred as a matter of law." *Senger Bros., Nursery, Inc. v. E.I. Dupont de Nemours & Co.,* 184 F.R.D. 674, 680 (M.D.Fla. Feb.5, 1999), 1999 U.S. Dist. LEXIS 1586. Applicable Florida law provides a five-year statute of limitations to file a "legal or equitable action on a contract, obligation, or liability founded on a written instrument." *Fla. Stat. § 92.11(2)(b) see Senger Bros. Nursery,* 184 F.R.D. at 683. *Florida Statute § 672.313* codifies UCC § 2-313 and governs express warranties under Florida law as follows:

> (1) Express warranties by the seller are created as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that the seller have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

This Florida codification is an exact reproduction of *UCC § 2-313* with the exception that this Florida version has clarified one word by replacing the word "he" in *UCC § 2-313(2)* with "seller."

"The statute of limitations for causes of actions based on a breach of an express warranty begins to run when plaintiff discovers, or should have discovered, the breach of the express warranty."*First Fed. Sav. & Loan Ass'n. v. Dade Fed. Sav. & Loan Assn'n,* 403 So.2d 1097, 1101 (Fla. 5th DCA 1981)."In a breach of warranty action, the statute of limitations begins to run when the defect giving rise to the cause of action is discovered or should have been discovered."*Florida Power & Light Co. v. Allis-Chalmers Corp.,* 1989 U.S. Dist. LEXIS 16640, at *14 (S.D.Fla. March 21, 1989). Defendant, Manufacturer, acknowledges that Florida's five-year statute of limitations period begins when the breach is discovered or should have been discovered, but also sets forth that such statute of limitations cannot begin to run past the explicit time period in which the express warranty expires. Accordingly, Defendant, Manufacturer, argues that the statute of limitations started to run (at the latest) when the Country Coach Limited Warranty expired on April 24, 2002, twelve months from the date of the RV's first retail purchase on April 24, 2001. Under this argument, Plaintiffs had five years from April 24, 2002, or until April 24, 2007, in which to file a breach of warranty claim. Thus, because Plaintiffs filed this action on August 10, 2007, Defendant Manufacturer argues that Plaintiffs were nearly five months past the applicable statute of limitations in filing the complaint.

**\*10** Plaintiffs argue that they became aware of the failure to adequately repair the RV in 2003 upon noticing the mold caused by condensation in the vehicle and that this is the time of the breach to begin the running of the statute. Plaintiffs further argue that their complaint filing date of August 10, 2007, is well within the five-year period of the applicable period under *Florida Statute § 92.11(b)(b).* Although Plaintiffs' Count V complaint is based upon both a defect of the RV, as well as the Manufacturer's failure to cure such defect in a reasonable time, Plaintiffs' response to Defendant, Manufacturer's, statute of limitations argument is premised solely upon the Defendant, Manufacturer's, failure to repair or replace a defect as warranted for twelve months in the COUNTRY COACH HOUSE/COACH LIMITED WARRANTY.

Thus, the issue before the Court regarding timeliness is whether the applicable statute of limitations for a breach of express warranty may begin after the COUNTRY COACH HOUSE/COACH LIMITED WARRANTY expired on April 24, 2002. For the following reasons, this Court finds that it cannot.

Although the applicable statute of limitations before the Court is embodied within *Florida Statute § 95.11(b)(2),* because this Florida Statute lacks express judicial precedent relating to its interpretation under the facts at hand, this Court looks to *Dubin v. Dow Corning Corp.,* for a similar interpretation of *Florida Statute § 95.11.* 478 So.2d 71 (Fla. 2d DCA 1985).*Dubin* involves the four-year statute of limitations embodied in Florida Statute § 95.11(3)(c) which governs improvements to real property. *Id.* at 72.In *Dubin,* a builder entered into a written contract to construct an office for the Plaintiff occupant and allegedly agreed to a five-year warranty. *Id.* Over the course of several years of occupancy by the Plaintiff, the roof leaked and was subsequently repaired numerous times. *Id.* In determining when the four-year statute of limitations of *Florida Statute § 95.11(3)(c)* began to run, the court held that "a four-year statute of limitations could commence *at any time up to the expiration of the warranty period."Id.* at 73 (emphasis added).*Dubin* further acknowledges that within this context, "the statute of limitations begins to run on a warranty when the contract is breached, and the breach occurs when the defect is or should be discovered."*Id.* (citing *AB CTC v. Morejon,* 324 So.2d 625, 628 (Fla.1975)).

Although *Florida Statute § 95.11(2)(b)* extends to a five-year limitation regarding liability founded on a written instrument (rather than the four years § 95.11(3)(c) relating to improvements of real property), both of these Florida statutes operate on the same rule of law for a breach of warranty claim. As stated above, "the statute of limitations begins to run on a warranty when the contract is breached, and the breach occurs when the defect is or should be discovered."*Id.* at 73 (citing *AB CTC,* 324 So.2d at 628 (Fla.1975)). Accordingly, in light of the holding in *Dubin* that limits such a rule to the "expiration of the warranty period," the five-year statute in *Florida Statute § 95. 11(2)(b)* should similarly be subjected to the requirement that the statute begins to run (at the latest) at the expiration of a warranty period. *Id.* at 73.

**\*11** Within this district, *Chmura* provides valuable insight into the very issue before the Court. 2006 U.S. Dist. LEXIS 11217, at *14. In referencing the five-year statute of limitations within *Florida Statute § 95.11(2)(b),* the *Chmura* court implies that such five-year statute begins to run at the expiration of the limited warranty. *Id.* Although *Chmura* is based upon a finding that a manufacturer may not limit the statute of limitations period to less than five years under *Florida Statute § 95.030,* the court's analysis provides highly relevant to the issue at hand. From the reasoning of

*Chmura,* by specifically setting forth the timeline between the "expiration of the limited warranty" and the date of filing of [a] lawsuit, it appears that the court views "the expiration of [a] limited warranty" as the day the five-year statute begins to run. *Id.* at*14-15. *Chmura* states:

> The warranty period was twelve months from the purchase date or the first 24,000 miles of use, whichever came first. (Exhibit 23 to Plaintiffs depo). Plaintiff purchased the vehicle on July 24, 2001, *so the twelve month period ended July 24, 2002;* however, [Defendant] later added six months onto the limited warranty. (Plaintiff's depo, p. 176). *Plaintiff did not file suit against Monaco until July 28, 2004 more than twelve months after the expiration of the limited warranty.*

> Plaintiff responds that Florida does not allow for a reduction in the limitations period for filing breach of express written warranty claims, and as such, Monaco's shortened limitations period is void. Plaintiff bases his argument on Florida Statute § 95.03, which provides that "any provision in a contract fixing the period of time within which an action arising out of the contract may be begun at a time less than that provided by the applicable statute of limitations is void."Furthermore, *Florida Statute § 95.11(2)(b) provides that an action on a contract founded on a written instrument must be brought within five years. Plaintiff has filed suit within the statutory period provided by Florida Statute § 95.11,* and [Defendant's] attempt to shorten the limitations period is void.

*Id.* at *14-15 (emphasis added). Upon holding that the Defendant, Manufacturer's, attempt to "shorten the limitations period is void," pursuant to Florida Statute § 95.03, the court importantly acknowledges that "*[p]laintiff has filed suit within the statutory period provided by Florida Statute § 95.11.*" *Id.* This statement is crucial to the case at hand as it raises the presumption that the five-year statute of limitations of *Florida Statute § 95.11(2)(b)* begins to run upon the expiration of the warranty. It appears that the date the *Chmura* court is referencing as calculating where the statute begins to run on the Plaintiff is July 24, 2002, the "expiration of the limited warranty ." *Id.* Under the facts of *Chmura,* the court would be correct in reasoning that the complaint was filed as the Plaintiff's July 28, 2004 complaint is only two years from the expiration of the limited warranty on July 24, 2002, and therefore within the five-year limit of *Florida Statute § 95.11(2)(b).* In light of *Dubin,* this reasoning by the *Chmura* court implies a uniform judicial interpretation that for a breach of express warranty claim in Florida, the

four-year statute of § 95.11(3)(b) and the five-year statute of § 95.11(2)(b) both begin to run upon the expiration of the express warranty at the latest. *Dubin,* 478 So.2d 71; *Chmura,* 2006 U.S. Dist. LEXIS 11217.

**12** This Court holds that the five-year statute of limitations set forth in *Florida Statute § 95.11(2)(b)* begins to run for a claim of breach of express warranty when the breach giving rise to the cause of action is discovered or should have been discovered, *or* when such warranty expires, whichever occurs first. Under the express warranty at issue, the applicable five-year statute of limitations cannot begin to run later than the expiration of the warranty as the warrantor did not expressly agree to provide warranty coverage beyond this date, even if he attempted to repair the RV after the expiration of the warranty. *See Pinnacle Point Community Ass'n v. Orenstein,* 1987 U.S. Dist. LEXIS 15143, at *42 (N.D.Fla. August 17, 1987) (explaining that "the mere fact that some corrective work may have been promised or discussed, or that there had been 'continuous treatment' in attempting to repair the original work, does not alter or toll the statute of limitations"). The STRUCTURAL WARRANTY section of the COUNTRY COACH HOUSE/COACH LIMITED WARRANTY clearly states that "[w]arranty repairs do not extend the warranty term on the house/coach portion of the motor-home or for any specific part, component, or system."Plaintiffs claim that the statute began to run in 2003, after the expiration of the express warranty, when the Defendant, Manufacturer, allegedly failed to adequately repair the RV is without merit.

Within this case, it is undisputed that the twelve month COUNTRY COACH HOUSE/COACH LIMITED WARRANTY started on April 24, 2001, when the RV was purchased new by a different owner. Accordingly, such twelve month warranty ended on April 24, 2002, thirty-nine days after Plaintiffs had purchased the RV used from Lazy Days on March 17, 2002. From the time of discovery of a breach of express warranty, or upon the warranty's expiration date on August 24, 2002 at the latest, Plaintiffs had five years under *Florida Statute § 95.11(2)(b)* to file a claim of breach of express warranty by Manufacturer under the UCC. Regardless of whether Plaintiffs are filing for breach of express warranty because of a defect in the RV, or for breach of express warranty because the Defendant, Manufacturer, failed to repair or replace the defect within a reasonable time, Plaintiffs failed to meet the deadline of April 24, 2007, by filing four months late on August 10, 2007, and are, thus, time-barred in filing this claim. Accordingly, Country

Coach's Motion for Summary Judgment is granted as to Count VII as a matter of law.

Defendant Manufacturer further argues that Count VII is legally deficient by failing to allege a covered "defect" under the terms of the warranty, and also asserts that Plaintiffs have no proof of cognizable "damages" as required by such a claim. However, due to the Court's above analysis, such issues will not be addressed.

## Count VIII

There was a scrivener's error in the Court's Order on Motion to Dismiss on March 3, 2008 (Dkt.47) when the Court granted in part and denied in part Defendants' Motion to Dismiss. Consistent with the analysis set forth in the Court's Order (Dkt.47), Defendants' Motion to Dismiss Plaintiffs' claims for Breach of Implied Warranties by Manufacturer under the UCC, Count VIII, is **GRANTED with prejudice.**

## Count IX

**\*13** As stated previously by this Court (Dkt.88), remedies under Magnuson-Moss, 15 U.S.C. § 2304, are only applicable to "full" warranties. *Lambert v. Monaco*, 2005 WL 1227485, at \*4 (M.D.Fla. May 24, 2005). The issue of summary judgment for Manufacturer for Count IX now turns on whether the Manufacturer provided a "full" or "limited" warranty to Plaintiffs under Magnuson-Moss.

This Court now adopts the explanation of "incidental" and "consequential" damages as explained in a previous Order (Dkt.88).15 U.S.C. § 2304(3), in its plain language, refers to "consequential damages" in that they may not be excluded or limited unless such is on the face of the warranty. This section of the Code does not mention "incidental" damages. Therefore, only limitations as to "consequential" damages must appear on the face of the warranty to satisfy Magnuson-Moss. *Uniform Commercial Code § 2-715* defines these different types of damages:

(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any reasonable expense incident to the delay or other breach.

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

The "consequential" damages provision of the Manufacturer's warranty is found on the back side of the warranty and states:

## CONSEQUENTIAL DAMAGES

Without regard to the alleged defect, Country Coach does not assume under any circumstances any responsibility for any consequential or incidental damages resulting from a defect in the motorhome, including without limitation, loss of time, loss of revenue, inconvenience expense for fuel, telephone or other communication charges, towing or service calls, rental vehicles, travel, meals, lodging, loss or damage to personal property, personal injury or emotional distress. Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation may not apply to you.

This is the clause that needed to appear on the face of the Manufacturer's warranty. Because this clause appears on the back side of the warranty, it does not meet the requirements of a "full" warranty embodied within 15 U.S.C. § 2304(3). Thus such warranty is a "limited" warranty under Magnuson-Moss.

Within the United States Code, 15 U.S.C. § 2303(a) states that written warranties shall be conspicuously designated as a "full warranty" or a "limited warranty." Manufacturer's warranty facially states in the document title line: "COUNTRY COACH HOUSE/COACH LIMITED WARRANTY."(Dkt.86, Ex. 8). Furthermore, in the byline under this title reads: "As defined by Magnuson-Moss Warranty-Federal Trade Commission Improvement Act" (Dkt.86, Ex. 8). Manufacturer's warranty has been acknowledged by both parties as a "limited warranty" and this fact is undisputed (Dkt.93, P. 4, No. 5, L.21-22). As stated previously, a "limited" warranty is not subject to § 2304 or the Magnuson-Moss Act's substantive remedies. *Lambert*, 2005 WL 1227485, at \*4 (citing *Schimmer v. Jaguar Cars, Inc.,* 284 F.3d 402, 405 (7th Cir.2004)).

**\*14** Therefore, recovery to Plaintiffs is not available under the Magnuson-Moss Act (§ 2304) because Manufacturer only provided a "limited" warranty to Plaintiffs. *See Bailey v. Monaco Coach Corp.,* 350 F. Spp.2d 1036, 1042 (N.D.Ga.2004), aff'd 168 Fed. Appx. 893 (11th Cir.2006); *Henson v. Allison Transmission, et al.,* 2008 U.S. Dist. LEXIS 6112, at \*10-11 (M.D.Fla. Jan. 28, 2008). Accordingly, Country Coach's Motion for Summary Judgment is granted as to Count IX as a matter of law.

### Count X

Defendants' Motion to Dismiss was granted in favor of Manufacturer on March 3, 2008 (Dkt.47) for Count X of Plaintiffs' complaint, Breach of Implied Warranties by Manufacturer under the Magnuson-Moss Warranty Act, for reasons of Plaintiffs' failure to allege facts that in any conceivable way could establish privity with Manufacturer as required to establish an implied warranty between the Manufacturer and the Plaintiff buyer. Accordingly, it is

**ORDERED** that Defendants' Objections be **SUSTAINED**, Defendants' Motions to Strike be **GRANTED**, Manufacturer's Motion to Dismiss (Dkt.13) be clarified to show it was granted as to Counts VIII and X, Lazy Days' Motion for Summary Judgment be **GRANTED** as to Count V, and Manufacturer's Motion for Summary Judgment be **GRANTED** as to Counts VII and IX. The Clerk of Court is directed to enter judgment for the defendants and close this case.

This Court reserves jurisdiction to award any costs and attorney's fees available to Defendants under Florida law, including by operation of Florida Statute § 768.79. If the attorneys do not arrive at an agreement within thirty days, an appropriately supported motion may be filed with this Court.

**DONE** and **ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2009 WL 500502, 68 UCC Rep.Serv.2d 519

---

Footnotes

1    Defendants also filed a notice of supplemental authority on October 7, 2008 (Dkt.102).

2    Fed.R.Evid. 902(12) also mentioned within the Business records exception in 803(6), is not applicable as it only applies to "foreign" records.

---

End of Document                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.